[Cite as *Gateway Royalty, L.L.C. v. EAP Ohio, L.L.C.*, 2025-Ohio-2961.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
CARROLL COUNTY

GATEWAY ROYALTY, LLC ET AL.,

Plaintiffs-Appellees,

v.

EAP OHIO, LLC, ET AL.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 CA 0980

---

Civil Appeal from the
Court of Common Pleas of Carroll County, Ohio
Case No. 20CVH29677

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Judges, and Eugene A. Lucci, Judge of the
Eleventh District Court of Appeals, Sitting by Assignment.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Molly K. Johnson*, Johnson & Johnson Law Firm, and *Atty. Robert C. Sanders*, Law
Office of Robert C. Sanders, for Gateway Royalty, LLC and Gateway Royalty II, LLC

*Atty. Timothy B. McGranor* and *Atty. Ilya Batikov*, Vorys, Sater, Seymour & Pease, LLP,
for EAP Ohio, LLC

*Atty. Adam K. Vernau*, Vernau Law LLC, for Gary Sitler, Retired Former President of Stocker & Sitler, Inc.

*Atty. Scott M. Zurakowski*, Krugliak, Wilkins, Griffiths & Dougherty Co., LPA, for Beck Oil and Gas, Inc. and TDX, LLC

Dated: August 15, 2025

———————————

**WAITE, J.**

**{¶1}** This case is another in a growing line of cases in Ohio involving overriding royalty interests ("ORRI") arising from oil and gas drilling leases. This appeal challenges the trial court's judgment disallowing the ability of Appellant EAP Ohio, LLC ("EAP Ohio") to deduct costs from its ORRI payments to Appellees, and more specifically, from deducting post-production costs. Appellees filed a complaint attempting to recover the costs that Appellant deducted from their ORRI payments. Appellant concedes the contracts reserving the ORRIs are silent regarding whether post-production costs may be deducted from the royalties. The trial court granted summary judgment to Appellees based primarily on our holding in the recent case of *Gateway Royalty II, LLC v. Gulfport Energy Corp.*, 2024-Ohio-4844 (7th Dist.), *appeal not accepted* 2025-Ohio-231 (hereinafter "*Gulfport*"). Appellant argues that, despite this Court's holding that in Ohio an ORRI is to be paid without deducting any share of post-production costs, the standard in the oil and gas industry is that post-production costs are deductible even when the ORRI contract is silent on the matter. This is the identical issue in *Gulfport*, and Appellant argues nothing that would cause us to question our reasoning or holdings in that case.

Case No. 24 CA 0980

We hereby affirm the trial court's decision to grant summary judgment in favor of Appellees.

Statement of the Facts and Case

{¶2}    The plaintiffs in the underlying case, Appellees Gateway Royalty, LLC and Gateway Royalty II, LLC (collectively "Gateway"), are Texas limited liability companies. Appellant EAP Ohio, LLC ("EAP Ohio") is a Delaware limited liability company and is the only remaining defendant in the case.  Ohio is the proper jurisdiction for this matter and neither party has raised any objection to jurisdiction or venue.

{¶3}    Appellees own an ORRI in certain gas wells in Carroll and Columbiana Counties.  The original holder of the ORRI was Patriot Energy Partners, LLC ("PEP"), a limited liability company formed in 2008 to enter into oil and gas leases with mineral owners in Ohio.  PEP had three members:  PEP Leasing LLC ("PEP Leasing"); Bass Energy Incorporated ("Bass"); and Buckeye Oil Producing Company ("Buckeye").

{¶4}    In 2008 PEP acquired oil and gas leases pertaining to 40,000 acres in southeast Ohio.  In 2010 PEP sold 126 of its Ohio oil and gas leases to Chesapeake Exploration, LLC ("Chesapeake").  In a 2010 Acquisition Agreement between PEP and Chesapeake, PEP reserved an ORRI for itself.  A Letter of Intent executed by both parties prior to the sale stated that the assignment of the leases would provide for:

[A] reservation in favor of PEP an overriding royalty interest (the "Retained ORR") equal to the difference between: (i) the royalty rate provided for in each Identified Lease, plus any burdens on the net revenue interest in existence as of the date of this Agreement as executed by PEP;

and, (ii) 16.625%. It is the intent of the parties that CHK [Chesapeake] shall be delivered no less than an 83.375% net revenue interest ("NRI") for all such Leases.

(Acquisition Agreement, p. 4.)

{¶5}   The Letter of Intent included a choice of law provision stating that Ohio law applies. PEP then executed and recorded "Partial Assignment of Oil and Gas Leases" addressing the leases in Carroll and Columbiana Counties. The partial assignments are uniform in all aspects other than the description of the specific oil and gas leases subject to assignment. The assignments were dated effective October 1, 2010.

{¶6}   In 2012 PEP and Chesapeake executed and recorded corrected assignments to correct the legal descriptions associated with some of the leases. The corrected assignments did not alter any of the terms of the Partial Assignment of Oil and Gas Leases. The original and corrected assignments will collectively be referred to as the "Assignment."

{¶7}   Neither the Acquisition Agreement nor the Assignment mentioned post-production costs, nor do they state that the ORRI is subject to any portion of post-production costs. The Assignment, drafted by Chesapeake, contains the following language:

PEP in its capacity as assignor ("Assignor") specifically excepts from this Assignment and reserves to itself the following ("Excluded Assets"): . . . 2.2 A reservation of an Overriding Royalty Interest equal to the difference between: (i) the royalty rate provided for in each Assigned Lease, plus any

Case No. 24 CA 0980

other burdens on the net revenue interest in existence as of the date of the Agreement and, (ii) 16.625%. It is the intent of the parties that Chesapeake shall be delivered no less than an 83.375% net revenue interest ("NRI") for all such Assigned Leases.

{¶8} On March 8, 2011, PEP decided to end its operations and distribute its assets. Those assets included a 4.125% royalty interest override in the leases sold to Chesapeake. The PEP members agreed to assign a portion of the 4.125% ORRI to Sonata Investment Company, Ltd. ("Sonata") as compensation for consulting services rendered to PEP in connection with PEP's sale of wells to Chesapeake and its retention of an ORRI in those wells. In 2014 and 2015, Appellees acquired a portion of the the original PEP ORRI from Buckeye and Sonata.

{¶9} In 2018 Chesapeake assigned its leases in Ohio to Appellant EAP Ohio. As a result, EAP Ohio is the entity that now has the contractual obligation to pay Appellees their ORRI pursuant to the Assignment.

{¶10} On November 18, 2020, Appellees filed a complaint for breach of contract and sought an injunction against Appellant and four other defendants, alleging the defendants wrongfully deducted post-production costs from every ORRI payment made to them. During the course of the litigation, four of the defendants were dismissed from the case. Only Appellant EAP Ohio remained as a defendant. The request for injunction was also dismissed.

{¶11} On March 18, 2024, Appellant filed a motion for summary judgment, alleging it was entitled to judgment as a matter of law because Ohio courts and the Ohio oil and

gas industry recognize that ORRI payments are free from production costs, but not from post-production costs.

**{¶12}** Appellees also filed a motion for summary judgment on March 18, 2024. They contended that the language of the Assignment was unambiguous. The assignment was silent as to post-production costs, and Ohio cases hold that such silence evidences a lack of intent to deduct these costs.

**{¶13}** On October 7, 2024, the trial court granted Appellees' motion for summary judgment and denied Appellant's motion. The court relied on our decision in *Gulfport,* which was released after the summary judgment motions were briefed in this case. The court held that the ORRI language in the Assignment was unambiguous, as it was silent regarding the deduction of post-production costs. The court allowed extrinsic evidence to be used to support each party's arguments regarding Ohio gas and industry custom and usage. The court rejected the expert opinions of Appellant, because they disregarded Ohio caselaw and contained no investigation of the custom and usage in Ohio concerning payment of post-production costs when an ORRI assignment is silent. Instead, the court relied on Appellees' experts, citing their Ohio oil and gas experience. Applying our *Gulfport* decision, the trial court held that Appellees were entitled to a refund of all post-production costs deducted from the ORRI payments because the Assignment creating the ORRI was silent regarding these deductions. The court ordered briefing on damages.

**{¶14}** On October 9, 2024, Appellant filed objections to Appellees' proposed judgment entry to the court. Appellant also requested that the court decline to address

industry custom and usage in its judgment entry, because the court found the ORRIs in the Assignment were unambiguous and applied our decision in *Gulfport.*

{¶15} On October 30, 2024, the court denied Appellant's objections in their entirety.

{¶16} The parties then filed a joint motion for a consent judgment entry as to damages and prejudgment interest, in the amount of $2,588,127.82. However, Appellant reserved the right to appeal the summary judgment ruling as to liability, and Appellees reserved the right to seek post-judgment interest following the conclusion of all appeals.

{¶17} On December 5, 2024, Appellant filed its notice of appeal and raises three assignments of error.

{¶18} Amicus briefs were filed in support of Appellees' position from Beck Oil and Gas, Inc. and TDX, LLC; and from Gary Sitler, a retired former president of Stocker and Sitler, Inc. Beck indicated that it has been drilling, operating and leasing minerals in Ohio since 1983 and has been involved with the drilling and operations of numerous oil and gas wells, with over 200 of them in Noble, Guernsey and Belmont counties. TDX indicated that it is an Ohio company formed to take ownership of ORRI from deep well production from producers, including Appellant. Beck and TDX represent that they own ORRI in 150 leases and they will be impacted by the Court's interpretation of the ORRI in the instant case. Sitler indicated that he was the long-time president of Stocker & Sitler, Inc., a major player in Ohio's oil and gas industry from the 1960s through the 1990s. He asserted that Stocker & Sitler was responsible for operating over 1,000 wells throughout the state, with leases covering in excess of 100,000 acres. Their positions will be addressed as needed within our analysis of Appellant's assignments of error.

<u>Standard or Review</u>

**{¶19}** An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603 (8th Dist. 1995).

**{¶20}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 386 (8th Dist. 1997).

<u>Case No. 24 CA 0980</u>

{¶21} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

{¶22} In its first assignment of error, Appellant asserts:

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE TRIAL COURT ERRED BY HOLDING THAT THE TERM "OVERRIDING ROYALTY INTEREST" AS USED IN THE PARTIES' AGREEMENT CREATED A ROYALTY INTEREST THAT WAS CATEGORICALLY FREE OF ALL POST-PRODUCTION COSTS ABSENT EXPRESS LANGUAGE TO THE CONTRARY. R. 1816, J. ENTRY at 10-12.

{¶23} Before addressing Appellant's specific arguments, it is clear that the parties agree on the basic legal principles governing this contract dispute action. The contracts under review are assignments of rights arising out of oil and gas leases. An assignment of an oil and gas lease is a contract, and principles of contract interpretation apply. *Cadle v. D'Amico*, 2016-Ohio-4747, ¶ 21 (7th Dist.). "In the case of contracts, deeds, or other written instruments, the construction of the writing is a matter of law, which is reviewed de novo." *Porterfield v. Bruner Land Co., Inc.*, 2017-Ohio-9045, ¶ 15 (7th Dist.). Written instruments "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 38 Ohio

St.2d 244 (1974), paragraph one of the syllabus. "When construing a deed, a court must examine the language contained within the deed, the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves failed to do." *Johnson v. Consol. Coal Co.*, 2015-Ohio-2246 (7th Dist.), ¶ 15. If the terms of the written instrument are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract. *Alexander v. Buckeye Pipe Line*, 53 Ohio St.2d 241, 246 (1978).

{¶24} Appellant contends that we should overrule *Gulfport*, and hold that the term "overriding royalty interest" creates an interest that is free from the costs of production, but not inherently free of post-production costs. Appellant submits that we erred in *Gulfport* by "defining an overriding royalty as cost free; that is, free from the post-production costs." *Gulfport*, at ¶ 29. Appellant urges that before *Gulfport*, no Ohio court ever addressed whether ORRIs included post-production costs.

{¶25} Appellant asserts that an ORRI is a subcategory of a royalty interest. A royalty is a "landowner's share of production, free of the expenses of production." *Kemp v. Rice Drilling D, LLC,* ¶ 29 (7th Dist.). Appellant explains that a royalty interest is calculated from the point that the oil or gas is extracted from the earth, but is not necessarily free of sharing in the expenses after the initial production. Appellant claims that this principle is also true of ORRIs. Appellant cites to *Lutz v. Chesapeake Appalachia, L.L.C.*, 2016-Ohio-7549, from the Ohio Supreme Court in support, but as later discussed, *Lutz* does not support Appellant's position. Appellant relies heavily on out-of-state cases and law review articles purportedly holding that ORRIs bear post-

production costs unless parties specifically state otherwise. Appellant contends that this view is virtually a universal principle in the oil and gas industry. Appellant also contends that we adopted an ORRI definition in *Gulfport* that was rooted in a misstatement of Oklahoma law in *Meeker v. Ambassador Oil Co.,* 308 F.2d 875 (10th Cir. 1962), rev'd, 375 U.S. 160 (1963), reh'g denied, 375 U.S. 989 (1964) (reversal on procedural grounds). Additionally, Appellant argues that our definition was based on dicta in another of our decisions, *Marquette ORRI Holdings, LLC v. Ascent Resources-Utica, LLC*, 2022-Ohio-3786, ¶ 17 (7th Dist.).

**{¶26}** Much of Appellant's argument, here, was considered and rejected in our recent *Gulfport* opinion. We will first address Appellant's repeated assertion that our *Gulfport* decision is an outlier among oil and gas cases in the United States. Appellant argues that *Gulfport* places Ohio in a unique position by supporting a no-cost interpretation (including no deduction of post-production costs) of an ORRI if the ORRI is otherwise silent on the question of costs. Whether or not this is true is not particularly relevant in this appeal, since there is no question that the parties and their contracts are subject to Ohio jurisdiction and Ohio law, and *Gulfport* is one of a line of cases upholding a cost-free interpretation of ORRIs in Ohio. Nevertheless, Appellant's assertion that, outside Ohio, a silent ORRI always means post-production costs may be deducted is so patently false that it must be addressed.

**{¶27}** In *Gulfport* we were faced with the same assertion now addressed by Appellant, and we rejected it. We examined cases from North Dakota, Oklahoma, and Texas, and found no blanket rule in favor of allowing for the deduction of post-production expenses from an ORRI that is silent on the matter. *Highline Expl., Inc. v. QEP Energy*

*Co.*, 43 F.4th 813 (8th Cir. 2022) (applying North Dakota law); *Claude C. Arnold Non-Operated Royalty Interest Properties, L.L.C. v. Cabot Oil & Gas Corp.*, 2021 OK 4, 485 P.3d 817; *Meeker v. Ambassador Oil Co.*, 308 F.2d 875, 878 (10th Cir. 1962) (applying Oklahoma law); *In re Mule Sky*, No. 20-355561 (Bankr. S.D. Tex.).

**{¶28}** One Texas case not included in *Gulfport* held that an ORRI stating it was cost-free meant it was free from both production and post-production costs. *Chesapeake Expl., L.L.C. v. Hyder*, 483 S.W.3d 870 (Tex. 2016). A Colorado case also disallows post-production deductions from ORRIs. *Garman v. Conoco, Inc.*, 886 P.2d 652 (Colo. 1994); reaffirmed in *Rogers v. Westerman Farm Co.*, 29 P.3d 887, 902 (Colo. 2001). We have found somewhat similar cases from Kansas and West Virginia. *Gilmore v. Superior Oil Co.*, 192 Kan. 388 (1964); *Wellman v. Energy Resources, Inc.*, 210 W.Va. 200 (2001). It appears that New Mexico also takes this position. *Abraham v. WPX Prod. Productions, LLC*, 184 F.Supp.3d 1150, 1193 (D.N.M. 2016). A recent Pennsylvania case recognized that various jurisdictions have taken different approaches to the question of whether post-production costs may be deducted from royalties where the lease is silent or ambiguous on the matter. *Dressler Family, LP v. PennEnergy Resources, LLC*, 2022 PA Super 77 (Pa. Super. Ct.).

**{¶29}** Some jurisdictions have enacted legislation or regulations to force the lessee to bear all costs up to the sale of the oil and gas at market to prevent post-production costs from being transferred to the royalty holders. "Wyoming has codified the marketability approach. The Federal government also requires that a lessee place gas in marketable condition at no cost to the Federal Government. . . .' 30 C.F.R. § 206.153(i) (1993)." *Garman v. Conoco, Inc.*, 886 P.2d 652, 658 (Colo. 1994)

**{¶30}** Hence, our holding in *Gulfport*, and Ohio's position generally on this issue, is by no means unique or an outlier among the cases or jurisdictions that have considered the question. Many jurisdictions have not yet ruled on this matter, and Appellant appears correct that Oklahoma has changed its position on whether post-production costs may be deducted based on a silent ORRI document. *See XAE Corp. v. SMR Property Management Co.*, 968 P.2d 1201 (Okla. 1998)). Interestingly, our examination of this more recent Oklahoma case has led us to other jurisdictions that agree with Ohio's position, instead of Oklahoma's. *See*, for example, *Hanna Oil & Gas Co. v. Taylor*, 297 Ark. 80, 759 S.W.2d 563, 565 (1988). Although we will not draft a treatise, here, the more we examine other jurisdictions, the more it appears Ohio's position is actually the majority in those states that have directly ruled on the matter.

**{¶31}** Appellant also believes that our *Gulfport* decision contradicts the Ohio Supreme Court's *Lutz* opinion. Appellant contends that we established a more stringent definition than contained in *Lutz*, because we barred all post-production costs incurred from the wellhead to sales points unless expressed in the contract, even if those sales points are located thousands of miles away. Appellant contends that *Lutz* rejected a rule that places the burden of marketing (and its costs) on the lessee rather than on the royalty holder. Appellant argues that, under *Lutz*, costs of production of oil and gas end at the wellhead, and costs incurred thereafter are post-production costs the parties share, even if the contract is silent on the matter.

**{¶32}** However, Appellant misstates the impact of *Lutz*. *Lutz* did not involve any substantive discussion of ORRIs, and the Court did not decide any issues regarding these royalty cost deductions, much less the deduction of post-production costs. The Ohio

Supreme Court initially accepted a certified question involving certain of those issues, but it decertified the question and returned the case to federal court to determine whether costs were deductible based on the language contained in the parties' lease. Any mention of post-production costs, the price of gas at the wellhead, the meaning of "free of cost," and any other matters related to the certified question, were discussed only in terms of case background and are not part of the analysis and holding of the Supreme Court.

{¶33} Turning to the contractual language of the Assignment in this appeal, both parties agree that the reservation of the ORRI in the Assignment is unambiguous. However, Appellees assert that the reservation unambiguously does not allow the deduction of post-production costs, while Appellant submits that the reservation unambiguously allows the deduction of post-production costs. The ORRI reservation language, Letter of Intent, and the Assignment Agreement are silent as to whether post-production costs are deductible. There is no genuine issue of material fact regarding this silence, and the ORRI unambiguously is silent on this matter. The question is: what does this silence mean in applying *Gulfport.*

{¶34} The trial court in the *Gulfport* case held that Gulfport had improperly deducted post-production costs from its ORRI payments to Gateway. Affirming the trial court's judgment, we reiterated the definition of an "overriding royalty" that we set forth in *Marquette ORRI Holdings, LLC*, 2022-Ohio-3786, at ¶ 17 (7th Dist.). In *Marquette*, we defined an ORRI as "a fractional interest in the gross production of oil and gas under a lease in addition to usual royalties paid to the lessor, free of any expense for exploration, drilling, development, operating, marketing and other costs incident to the production and sale of oil and gas produced from the lease." *Gulfport* at ¶ 29, quoting *Marquette* at ¶ 17.

We noted that at least seven Ohio cases had either relied on precedent that an ORRI is free from costs or had expressly defined an ORRI to exclude operating costs. *Gulfport* at ¶ 29; *Marquette* at ¶ 17; *Sound Energy Co., Inc. v. Ascent Resources - Utica, LLC*, 2021 WL 1102483, *7 (S.D.Ohio Mar. 23, 2021); *Talmage as Tr. of Ralph W. Talmage Tr. v. Bradley*, 377 F.Supp.3d 799, 809 (S.D.Ohio 2019); *Holland v. Gas Ents. Co.*, 2015-Ohio-2527 (4th Dist.); *GM Gas Expl., Inc. v. McClain*, 1991 WL 163644, *8 (4th Dist. Aug. 13, 1991); *In re Future Energy Corp.*, 83 B.R. 470, 479 (Bankr. S.D. Ohio 1988); *Jerry Moore, Inc. v. Tr. Co. of Florida*, 1981 WL 6268, *1 (5th Dist. June 2, 1981).

**{¶35}** Based on that definition, we determined that when an ORRI is silent regarding whether a party may deduct post-production costs from royalty payments, there is a presumption that no such costs should be deducted. *Gulfport* at ¶ 29. Gulfport, as the appellant, sought to have us disregard this definition, claiming the definition was based on dicta in *Marquette*. *Id*. at ¶ 30. However, we held our definition of an ORRI in *Marquette* was not dicta, because this definition was central to the case, which concerned the effect of ORRIs on oil and gas leases in counties within our district. *Id.*

**{¶36}** We also held that while the starting point in looking at the issue is that post-production costs cannot generally be deducted from ORRI payments, contracting parties may agree to language allowing such deductions. *Id*. at ¶ 37. We explained that the operating costs Gulfport sought to deduct as post-production costs were prohibited by the ORRI agreements between the parties, because the agreements expressly provided that the ORRIs "shall be free and clear of all operating expenses." *Id*. at ¶ 4, 28.

**{¶37}** Appellant in this matter would have us overrule the definition of ORRI applied in *Gulfport* and set forth in *Marquette*. Appellant claims our definition was

erroneously based on dicta and conflicts with the definition of ORRI found in other cases, including *Lutz*. Again, as we stated in *Gulfport*, the definition of ORRI in *Marquette* was not dicta, and remains valid. We reject Appellant's argument once again on this basis.

**{¶38}** Further, our ORRI definition does not conflict with *Lutz*. In *Lutz*, the Ohio Supreme Court declined to answer the question of law submitted from the United States District Court for the Northern District of Ohio, Eastern Division. *Lutz*, 2016-Ohio-7549, at ¶ 2. The dispute was between landowner-lessors and Chesapeake Appalachia, LLC, the lessee. The district court asked the Ohio Supreme Court to answer the question of whether Ohio followed the "at the well" rule, which presumably allows a lessee to deduct post-production costs from the landowners' royalty; or whether Ohio follows the "marketable product" rule, which limits the deduction of post-production costs. *Id.* at ¶ 1.

**{¶39}** The Supreme Court declined to answer the question. Instead, the *Lutz* decision held that oil and gas leases are contracts subject to traditional contractual construction rules, and the specific language of the parties' contract controls. This was neither a new, nor controversial, holding. While there was mention of post-production cost deduction from royalty payments, this was merely raised as background information in the case and was not a factor in the analysis or holding of *Lutz*.

**{¶40}** In *Gulfport,* we held that while ORRIs are generally cost-free, the contracting parties are free to agree to include certain costs in their contracts. Thus, both *Lutz* and *Gulfport* hold that traditional contract interpretation principles apply to oil and gas leases, including ORRI assignments. These cases also hold that the specific language expressed by the parties in their assignments and leases govern their rights and remedies. *Gulfport* in no way contradicts the lessons of *Lutz*.

**{¶41}** In sum, this Court has held that unless expressly provided otherwise in an agreement between the parties, ORRI payments are not subject to post-production costs where the ORRI is silent as to those costs. The contracts at issue in this case, particularly the ORRI language in the Assignment Agreement, did not specifically provide that post-production costs were deductible from ORRI payments. Consequently, post-production costs are not deductible from these ORRIs.

**{¶42}** Appellees seek to bolster our *Gulfport* holding and would have us rely on the rule of construction that "[s]ilence on a particular point or the total absence of a provision from a contract or lease, is evidence of an intention of the parties to exclude this item from the contract or lease, rather than evidence of an intention to include it." *DN Reynoldsburg, L.L.C. v. Maurices Inc.*, 2023-Ohio-3492, ¶ 31 (10th Dist.); *see also Buckeye Union Ins. Co. v. Consol. Stores Corp.*, 68 Ohio App.3d 19, 25 (10th Dist. 1990). Although this is a valid rule of construction, it is rarely applied in Ohio. The rules of construction, whether in interpreting statutes, rules of court, or contracts, are normally only applied if the language being interpreted is ambiguous. *State ex rel. Reynolds v. Nix*, 2024-Ohio-4669, ¶ 22; *State ex rel. Potts v. Comm. on Continuing Legal Edn.*, 93 Ohio St.3d 452, 456 (2001). "Rules of construction are aids in ascertaining the intent of the parties when the language used is ambiguous. They should never be invoked if the language is clear. If the meaning is apparent, the terms of the agreement are to be applied, not interpreted." *Carroll Weir Funeral Home, Inc. v. Miller, In re Appropriation of Easement for Hwy. Purposes*, 2 Ohio St.2d 189, 192 (1965). The ORRI language in *Gulfport* was unambiguous, just as the language in the Assignment is unambiguous, here. There is no need to rely on the rule of construction proposed by Appellees.

Case No. 24 CA 0980

{¶43} Accordingly, we conclude that Appellant's first assignment of error lacks merit and is overruled.

{¶44} In its second assignment of error, Appellant asserts:

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED BY INTERPRETING THE PARTIES' AGREEMENT ACCORDING TO A PURPORTED LOCAL CUSTOM OR USAGE CONCERNING POST-PRODUCTION COST DEDUCTIONS IN THE ABSENCE OF ANY PROOF THAT THE PARTY TO BE CHARGED KNEW OR HAD REASON TO KNOW OF THE PURPORTED LOCAL CUSTOM OR USAGE WHEN IT SIGNED THE CONTRACT.

{¶45} Appellant contends that since the trial court found the agreement between the parties is unambiguous, the trial court should have not determined that "it is the industry custom and usage in Ohio not to deduct costs from overriding royalty when the Assignment creating the ORRI is silent as to cost deductions." Appellant submits that the court also erred in weighing the evidence offered on the issue of custom or usage in deciding the interpretation of the agreement between PEP and Chesapeake.

{¶46} Appellant claims the matter regarding custom and usage involves a disputed issue of material fact that a jury should decide. Appellant contends that even if an Ohio-specific custom and usage exists, it did not control the original agreement, because undisputed evidence showed that Chesapeake did not know or have reason to know about it when it executed its original agreement with PEP, Appellees' predecessor.

**{¶47}** Appellant cites the affidavit of one of Chesapeake's principals, Henry Hood, regarding his understanding of the ORRI language. Hood oversaw Chesapeake's negotiations with PEP and signed the Acquisition Agreement. Mr. Hood's understanding was that Chesapeake intended for the ORRI to bear post-production costs based on the company's prior experience in the industry. Mr. Hood attested that at the time Chesapeake executed the agreement with PEP, Chesapeake had no knowledge of any Ohio custom, usage, or practice of excluding post-production costs from ORRI payments.

**{¶48}** Appellant contends the trial court erred in disregarding this evidence, even though it was undisputed. Appellant argues the court erred in weighing Mr. Hood's credibility, and failed to credit this evidence in Appellant's favor when deciding whether summary judgment was appropriate. Appellant further asserts the court erred by determining that Chesapeake should have known about specific industry custom or usage in Ohio. It submits that the court should not have determined whether Chesapeake knew or had reason to know of the usage when the agreement was signed.

**{¶49}** Evidence of industry custom is a type of extrinsic evidence typically used to determine the parties' intent in a contract when the contractual language is ambiguous. *EAP Ohio, LLC v. Sunnydale Farms, LLC.*, 2024-Ohio-4522, ¶ 47 (7th Dist.). However, extrinsic evidence can also be used for the reason it was considered by the trial court in this case. Industry custom evidence can be used to show that the terms in a contract "have a special meaning within a certain geographic location or a particular trade or industry, even though that meaning is not reflected on the face of the agreement." *Id*. at ¶ 49.

**{¶50}** The trial court relied on the Ohio Supreme Court's *Alexander* decision and our *Sunnydale* opinion to consider the extrinsic evidence of industry custom in the oil and gas industry in Ohio. In *Alexander*, the Ohio Supreme Court held that:

> It is well-settled that although extrinsic evidence of a general custom or trade usage cannot vary the terms of an express contract, such evidence is permissible to show that the parties to a written agreement employed terms having a special meaning within a certain geographic location or a particular trade or industry, not reflected on the face of the agreement. *Steel Works v. Dewey* (1881), 37 Ohio St. 242, 249; *State v. Redd* (1930), 122 Ohio St. 162, 167, 171 N.E. 20.

53 Ohio St.2d 241, 248.

**{¶51}** This is the same reasoning we used in allowing extrinsic evidence to be raised in *Gulfport*: "[P]arol evidence can be used to explain technical terms of art used in a matter particular to a trade or industry [and] is admissible to provide special meaning given by the industry to language employed in a contract." *Gulfport* at ¶ 17.

**{¶52}** Courts may rely on extrinsic evidence to ascertain the parties' intent when: (1) the contract language is ambiguous; or (2) when "the circumstances surrounding the agreement invest the language of the contract with a special meaning." (Citations omitted.). *Kenney v. Chesapeake*, 2015-Ohio-1278, ¶ 44 (7th Dist.).

**{¶53}** We agree with the trial court the ORRI language is unambiguous to the extent that it is silent regarding what costs, if any, may be deducted from the ORRI payments. The legal definition of an ORRI in Ohio is also unambiguous: "An 'overriding

royalty' is a fractional interest in the gross production of oil and gas under a lease in addition to usual royalties paid to the lessor, free of any expense for exploration, drilling, development, operating, marketing and other costs incident to the production and sale of oil and gas produced from the lease." *Gulfport* at ¶ 29, quoting *Marquette* at ¶ 17. As we explained in *Gulfport*, this is a cost-free definition that does not allow for the deduction of post-production costs unless the contract language expressly provides otherwise.

{¶54} The ORRI language under review here is also silent as to post-production costs. Appellees do not contend that there is any special meaning in the ORRI language different from what is already stated in Ohio law. The parties have not raised any objections about the application of Ohio law to this case. Appellant urges, however, that Ohio law is wrong and should be changed, and that there is a special meaning in other jurisdictions when contracts are silent about ORRIs. If, as Appellant contends, some different meaning should be applied to the definition of ORRI in this case, it was up to Appellant to prove it, or at least create a genuine issue of material fact on the issue.

{¶55} The trial court examined the testimony of the proffered experts as to the Ohio oil and gas industry definition of ORRI to determine if some different definition should be applied due to Ohio custom or practice. The record contains the affidavits of Ronald Gibson, David Mansbery, and Thomas Wood, all of whom had extensive experience in the oil and gas industry in Ohio. They concluded that the industry custom in Ohio prior to the time these leases were acquired was that overriding royalties are not subject to any post-production costs other than severance or ad valorem taxes. They also concluded that most ORRI assignments are silent as to post-production costs, and that such silence indicates that the costs cannot be deducted.

{¶56} The record is undisputed that Appellant's experts had no knowledge of Ohio ORRI calculations and relied solely on their experience outside of Ohio. Two of Appellant's experts failed to cite or acknowledge the Ohio cases defining ORRIs as cost-free, while the third refused to give any weight to the Ohio cases even though the treatise he cited actually referred to them. It is particularly harmful to Appellant's position that their expert Bruce Kramer, editor of the Williams and Meyers treatise on oil and gas, acknowledged that his definition of ORRI allowing for deduction of post-production costs was not the only accepted definition, had never been cited in Ohio caselaw, and his own treatise contained Ohio citations that contain the cost-free definition of an ORRI relied on in *Gulfport*. Kramer was also aware that other jurisdictions had adopted a definition contrary to the one in Williams and Meyers, thus confirming our conclusion that there is no universally accepted definition that allows for post-production costs.

{¶57} The Beck and TDX amicus brief, as well as the Sitler brief, assert that Chesapeake, as a member of the oil and gas industry, is held to a constructive knowledge standard of the custom and usage in Ohio as to ORRIs. Mr. Sitler notes that Chesapeake is the second largest producer of natural gas in the United States, yet feigns ignorance as to the custom and usage of the term ORRI in Ohio. Appellees argue that parties who operate in a trade or industry are required to know customs in the industry and are bound by them. We agree. Knowledge of trade usages, customs, and practices are imputed to those within the trade. *Bosjnak v. Superior Sheet Steel Co.*, 145 Ohio St. 538, 539 (1945); *Yardmaster, Inc. v. Kish*, 1998 WL 684831, *4 (11th Dist. Sept. 25, 1998). "A valid custom is also a rule of the trade, and a person who deals in articles sold that come within the

terms of the custom will not be protected by an assertion of ignorance of the usage." 92 Ohio Jur. 3d Usage and Custom § 16.

**{¶58}** Appellant contends that it could be bound by Ohio's definition of an ORRI only if it knew or had reason to know of the usage, citing *Jurgensen Co. v. Fairborn*, 2015-Ohio-5478, ¶ 29 (1st Dist.). *Jurgensen* also holds that "[t]he express terms of a contract generally prevail over custom or 'usage of trade' ." *Id.* The custom or usage of trade only enters into the discussion "to clarify disputed contract language." *Id.* The contract language here is not in dispute. Appellant hoped, through its many out-of-state case citations and presentation of expert testimony, to create a dispute about whether there was a universal definition of ORRI that allowed for post-production cost deductions. Since there was no such universal definition in 2010 when the Acquisition Agreement and Assignment were executed, or at any other time relevant to this case, the express terms of the contracts prevail, pursuant to Ohio law.

**{¶59}** Appellant's argument is actually that Chesapeake, as Appellant's predecessor in interest, was ignorant with respect to Ohio's definition of ORRI when it entered into the Assignment Agreement with PEP in 2010. Since 1991, the law in Ohio has been that an ORRI is "free of any expense for exploration, drilling, development, operating, marketing and other costs incident to the production and sale of oil and gas." *GM Gas Expl., Inc. v. McClain* at *8. At the time Appellant began deducting post-production expenses from Appellee's ORRI payments in 2019, at least five Ohio cases had announced and relied on this consistent conclusion. As courts have stated in the context of countless disputes: Ignorantia Juris neminem excusat (Ignorance of the law

Case No. 24 CA 0980

excuses no one). *In re Adoption of H.N.R.*, 2015-Ohio-5476, ¶ 13; *Sheehan v. McRedmond*, 1998 WL 774983, *3 (8th Dist. Nov. 5, 1998).

{¶60} In order to grant summary judgment there must be no genuine issue as to any material fact. Although the parties' experts offered separate opinions, the opinions of Appellant's experts did not create any genuine issue of material fact regarding Ohio's definition of an ORRI or Ohio's gas and oil industry custom and usage of the term ORRI as a "cost-free" interest that does not allow for the deduction of post-production costs. Accordingly, Appellant's second assignment of error lacks merit and is overruled.

{¶61} In its third assignment of error, Appellant asserts:

ASSIGNMENT OF ERROR NO. 3

DID THE TRIAL COURT ERR BY WEIGHING CONFLICTING TESTIMONY CONCERNING THE EXISTENCE OF AN OHIO-SPECIFIC CUSTOM OR USAGE ON POST-PRODUCTION COST DEDUCTIONS FROM ORRIS AND THE PARTIES' MUTUAL INTENT OVER THE ALLOCATION OF SUCH COSTS?

{¶62} Appellant claims the court erred in granting summary judgment in Appellees' favor because it improperly weighed the evidence when disputed material facts existed concerning custom and usage and the parties' intent regarding post-production costs. Appellant contends that conflicting evidence was offered as to whether Ohio follows a custom and usage in the oil and gas industry treating ORRIs as free of post-production costs and whether the parties intended for this ORRI to be free of post-production costs.

**{¶63}** As we stated in addressing Appellant's second assignment of error, it was Appellant's burden to establish a genuine issue of material fact regarding some special meaning of ORRI that differs from the meaning established in Ohio law. As our review is de novo, we must determine, as did the trial court, whether there are outstanding factual matters in dispute, and whether these are material to this case. In addressing the conflicting expert opinions here, it is readily apparent that the trial court was faced with determining whether Appellant's experts raised genuine issues of material fact sufficient to overcome summary judgment. It is also readily apparent the trial court decided they did not, and we reach the identical conclusion following our review.

**{¶64}** Appellant asserts that Appellees' experts presented conflicting testimony when they attested that Ohio custom is that silent ORRIs bear no post-production costs. Appellees' expert Mr. Gibson testified that his company deducts marketing expenses from ORRIs. Appellant contends that we recognized in *Tera, LLC v. Rice Drilling D*, LLC, 2023-Ohio-273, ¶ 125 (7th Dist.) that a marketing fee is a post-production cost. Appellant concludes this "conflicting" testimony requires a jury trial to determine the issue, as it involves credibility, which may not be determined by a court in summary judgment.

**{¶65}** Appellant incorrectly interprets Mr. Gibson's testimony, however. Mr. Gibson stated that his company pays overriding royalties based on what he called the Appalachian Basin price, the price paid by East Ohio Gas. Gibson addressed a 45-cent adjustment made to that price by East Ohio Gas to convert a price from Henry Hub NYMEX to the Appalachian Basic price. This price adjustment does not contradict, or create a material question of fact regarding, other statements made by Gibson as to Ohio's oil and gas custom that post-production costs are not deducted from ORRIs.

Case No. 24 CA 0980

**{¶66}** Appellant also argues that Appellees' expert Mr. Mansbery, owner of Duck Creek Energy, deducts a marketing fee before paying his royalty holders their share in the sale of gas. In examining Mansbery's testimony, it is clear that there is another entity involved prior to the time the gas is ultimately sold to the end user that may incur expenses. Duck Creek Energy, however, pays royalties based on the proceeds it receives for the gas without it making any deductions. Appellant acknowledges that Duck Creek Energy does not show any deductions on its royalty statements.

**{¶67}** Appellant also questions whether Appellees' experts had extensive knowledge of Ohio ORRI contract provisions or personal knowledge of ORRI contracts that were silent regarding post-production costs. Regardless of how extensive the experts' personal experience was, Appellant agrees they had some knowledge of Ohio oil and gas industry custom, whereas Appellant's experts admittedly had none. Importantly, Appellees relied, first and foremost, on established Ohio law. It was up to Appellant to establish there was some alternative in Ohio oil and gas industry practice to challenge that law, or at least raise some question of material fact for trial. Appellant failed in this effort.

**{¶68}** Appellant raises the fact that all of Appellees' experts agreed deductions were made from ORRIs for taxes. Appellees do not dispute that even a silent ORRI allows deductions for taxes. By all accounts, the taxes deducted from ORRI payments are appropriate, and they were never at issue in this case.

**{¶69}** Finally, Appellant asserts that Appellees' experts had no experience with shale drillers like Appellant. This appears irrelevant to the matter. Regardless, Appellees' expert provided some evidence regarding this type of drilling. Appellant cites to this

expert testimony, discussing the recent systems their companies created and/or upgraded due to shale drilling that caused them to incur post-production costs. The record shows these experts testified that even though they incurred these new and/or extra post-production costs, they did not deduct the costs from ORRI payments.

{¶70} Appellant has not shown any error in the trial court's review of the expert evidence or the evidence regarding Chesapeake and PEP's prior knowledge of Ohio law and custom regarding the definition of an ORRI. The trial court was required to review all of the evidence offered, to determine whether any of it raised a question of material fact. The court determined, and we agree, that any conflicting evidence offered by the parties was not material to the legal issue, and we agree with the trial court. Appellant's challenges to Appellees' experts do not hold up under scrutiny, and there is no basis for its contention that genuine issues of material fact exist regarding oil and gas industry custom and usage. Appellant fails to prove facts that conflict with established caselaw regarding ORRIs that are silent as to deductions for post-production costs.

{¶71} Accordingly, this assignment of error lacks merit and it is overruled.

Conclusion

{¶72} In this appeal of the trial court's decision to grant summary judgment to Appellees, the court determined Appellees were entitled to recover post-production costs that had been deducted from ORRI payments. The issue on appeal is whether an ORRI that is silent about post-production costs is presumed to prohibit such deductions. In our recent *Gulfport* decision, we held that the definition of ORRI in Ohio prohibits post-production cost deductions absent express provisions to the contrary, and the trial court correctly applied *Gulfport* to the facts of this case. Appellant would like us to reverse

Case No. 24 CA 0980

*Gulfport*, claiming it is inconsistent with the interpretation of ORRI in other jurisdictions. We disagree, and note that in reviewing Appellant's arguments, Ohio's definition is more the norm than the exception in the oil and gas industry. Regardless, *Gulfport* remains the law in Ohio. Appellant also argues that the trial court improperly weighed conflicting evidence in summary judgment proceedings regarding local gas and oil industry customs, and failed to consider that at least one of the parties to the original ORRIs did not know of Ohio's local industry customs regarding silent ORRIs as cost-free. Appellees offered evidence of the local industry custom in Ohio. Nothing in Appellant's evidence served to rebut Appellees' experts, and the evidence offered by Appellant did not raise a question of material fact in this matter. Additionally, we must note that parties who practice in a trade are presumed to know industry customs and usages. Because there was no question of material fact, the matter was appropriately decided as a matter of law. We reaffirm our reasoning and holding in *Gulfport*, and the trial court properly granted summary judgment to Appellees to recover the post-production charges that were erroneously deducted. Appellant's three assignments of error lack merit and are overruled. The judgment of the trial court is affirmed.

Robb, P.J. concurs.

Lucci, J. concurs.

Case No. 24 CA 0980

---

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Carroll County, Ohio, is affirmed. Costs to be taxed against Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**